UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JEAN LEE,

                Plaintiff,

v.                                          5:08-CV-00348 (NPM/ATB)

ROBERT A. DURR,

                Defendant.

---

ROBERT A. DURR,

                Third-Party Plaintiff,

v.

LIBERTY INSURANCE UNDERWRITERS, INC.,

                Third Party Defendant.

---

| APPEARANCES | OF COUNSEL |
|---|---|
| Jonathan Robert Nelson, P.C.<br>Attorney for Plaintiff<br>111 Broadway, Suite 1805<br>New York, NY     10006-1904 | Jonathan R. Nelson, Esq. |
| Sidney P. Cominsky, LLC<br>Attorney for Defendant/<br>Third Party Plaintiff<br>1500 State Tower Building<br>Syracuse, NY     13202 | Sidney P. Cominsky. Esq. |

NEAL P. McCURN, Senior U.S. District Court Judge

**<u>MEMORANDUM - DECISION AND ORDER</u>**

This breach of contract and attorney malpractice action was brought by plaintiff Jean Lee ("Lee") against defendant Robert A. Durr ("Durr"). Durr has cross-complained against third-party defendant Liberty Insurance Underwriters, Inc. ("Liberty"), the issuer of Durr's attorney malpractice insurance policy, for denying coverage and refusing to defend Durr in the underlying action. Jurisdiction based on diversity and proper venue are asserted pursuant to 28 U.S.C. §§ 1332(a) and 1391(a). Currently before the court is Liberty's motion for summary judgment (Doc. No. 46), and Durr's motion to dismiss the complaint pursuant to Fed. R. Civ. P. Rule 12(c) and 12(h)(2)(B) or for lack of subject matter jurisdiction, or in the alternative, for summary judgment (Doc. No. 53). For the reasons set forth below, Durr's motion to dismiss for lack of subject matter jurisdiction is granted. Durr's third party claims against Liberty are also dismissed for lack of subject matter jurisdiction, and Liberty's motion for summary judgment is denied as moot.

## I.     Facts and Procedural History

Lee, a New Jersey resident at the time she filed the current malpractice action, was involved in an incident at the Keansburg Amusement Park, Keansburg, New Jersey, on June 9, 2001. On that date, Lee was seated in a roller coaster car waiting to start her ride on the WildKat Roller Coaster when another

car that was completing its ride failed to brake as it came into the station. The car was traveling at about 5 miles per hour when it collided with an empty roller coaster car which in turn bumped the car in which Lee was sitting. Lee was taken by ambulance to a local hospital where she complained of whiplash to her back and neck. Lee also asserts that she had pain, redness and swelling in her right foot, and that a few months after the accident she developed a pea-sized growth on that foot.

  Lee, who claimed to be a resident of New York State at the time of the incident, contacted an attorney in Syracuse, New York who had represented her in a criminal matter. That lawyer was unable to represent her, so he referred Lee to Durr. Lee contacted Durr by phone on or about June 15, 2001, and Durr agreed to take her case on a contingency basis. On June 7, 2004, within the statutory time frame for filing a personal injury case in New York, Durr filed Lee's personal injury lawsuit in Supreme Court for the State of New York, in Onondaga County. See <u>Jean Lee v. Keansburg Amusement Park, and Jersey Shore beach & Boardwalk Company a/k/a/ Jersey Shore Beach & Boardwalk, Inc.</u>, Index No. 2004-3420, June 7, 2004.

  The complaint in that action stated that Lee was and continues to be a

resident of Onondaga County.[1]  Defendants in that action removed the case to this court on July 5, 2004  (Case No. 5:04-cv-771 (NPM/DEP)) and thereafter filed a motion to correct the case caption and to dismiss the complaint or transfer the action to the District of New Jersey.   After oral argument held on December 22, 2004, this court found that it did not have jurisdiction over the matter, and transferred Lee's case to the District of New Jersey.  On March 7, 2005, Andrew John Calcagno of New Jersey was substituted as attorney of record, replacing Durr, who signed as withdrawing attorney. Doc. No. 68, Exh. 10.  On April 1, 2005, the District of New Jersey court dismissed Lee's case.  Doc. No 68, Exh. 1.

Lee alleges in her current complaint that she tried in vain to reach Durr to inquire about the status of her case.  Lee alleges that she traveled to Durr's office in Syracuse, New York, on September 11, 2007, and at that meeting, without corroborating witnesses present, Durr allegedly told Lee that he had committed malpractice and that Lee should sue him for same.  Durr denies this allegation and states that Lee did not inform him of any intention to sue him for malpractice.  He asserts that he was informed of her intent to do so when he was served with a

---

[1] The court presumes that Lee related her residence information to Durr.  The court subsequently transferred that action to the District of New Jersey for lack of subject matter jurisdiction.  The court notes that in the current action, she declares (Doc. No. 67) that at the time Durr filed the complaint on her behalf, she was residing in New Jersey, and argues that Durr committed perjury in the court filing.

summons and complaint alleging malpractice on April 28, 2008. When Durr received the summons and complaint, he notified Liberty, his professional liability insurance company. Liberty assigned Durr an attorney who drafted the original answer on Durr's behalf, but in June of 2008, Liberty disclaimed its duty to defend and indemnify Durr. Liberty's subsequent motion for summary judgment repeats Lee's allegations almost verbatim and cites a lack of contractually prescribed notice as the reason for its denial of Lee's defense and indemnification.

Magistrate Judge Peebles permitted Durr to file his motion to dismiss and all subsequent responses and replies in the traditional fashion, due to the fact that "the plaintiff has been concerned throughout this proceeding about the confidentiality of information concerning her criminal, medical and mental health histories ... which might be embarrassing to her." (Doc. No. 42).[2]

## II.   Discussion

In his motion, Durr asks the court to grant judgment on the pleadings

---

[2] The court has found this to be burdensome and a great inconvenience as any technological advantages gained by electronic filing, e.g., search functions, etc., were lost and replaced by the inefficient, decades old method of shuffling reams of paper. In addition, this court has previously stated that "[p]rivate matters which are discoverable may, upon a showing of cause, be put under seal ... in the first instance ... At the adjudication stage, however, very different considerations apply." Otatti v. City of Amsterdam, 5:06-CV-1370, MDO, January 25, 2010. "The presumption of access is based on the need for federal courts ...to have a measure of accountability and for the public to have confidence in the administration of justice." Id. Should plaintiff successfully appeal this decision, the court will enter an order that the current motion and all accompanying documents shall be filed on the public docket.

pursuant to Fed. R. Civ. P. 12(c) & 12(h)(2)(B) and dismiss the complaint, but if the court rules that the complaint states a claim for legal malpractice, Durr asks the court to grant summary judgment in his favor pursuant to Fed. R. Civ. P. Rule 56. Durr's third argument is one that the court must address first: that this court lacks subject matter jurisdiction over the instant action because plaintiff has failed to prove to a reasonable probability that the amount in controversy requirement of $75,000.00 has been met.

### A. Subject Matter Jurisdiction

"The subject matter jurisdiction of the federal courts is limited. Federal jurisdiction is available only when a 'federal question' is presented, 28 U.S.C. § 1331, or when the plaintiff and defendant are of diverse citizenship and the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332." Amadasu v. Ngati, 2006 WL 842456 at * 6 (E.D.N.Y. 2006). "Even where the parties are satisfied to present their disputes to the federal courts, the parties cannot confer subject matter jurisdiction where the Constitution and Congress have not. The absence of such jurisdiction is non-waivable; before deciding any case we are required to assure ourselves that the case is properly within our subject matter jurisdiction." Wynn v. AC Rochester, 273 F.3d 153, 157 (2d Cir.2001).

Stated differently, "[t]he diversity statute confers original jurisdiction on the federal district courts with respect to 'all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States.' 28 U.S.C. § 1332(a).  Federal Rule of Civil Procedure 12(b)(1) authorizes motions to dismiss for lack of subject matter jurisdiction." Scherer v. Equitable Life Assurance Society of U.S., 347 F.3d 394, 397 (2d Cir. 2003). "A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount ... however, ... we recognize 'a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy.'" Id. (internal citations omitted).  "To overcome the face-of-the-complaint presumption, the party opposing jurisdiction must show 'to a legal certainty' that the amount recoverable does not meet the jurisdictional threshold ... The legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim." Id.  For the court to make a determination on this issue, the amount in controversy must be measured "as of the day of the complaint.  Once jurisdiction has attached, it cannot be ousted by subsequent events." Id.  "[D]amages in a legal malpractice case are measured by reference to the value of the claim lost." Robinson v. Holder,

2008 WL 2875291 AT * 2 (S.D.N.Y. 2008) (citing <u>Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, Inc.</u>, 780 N.Y.S.2d 593, 596 (1st Dep't 2004).

In the case at bar, Lee demands judgment against Durr for compensatory damages in the amount of one million dollars, punitive damages in the amount of one million dollars, interest from June 9, 2003, plus costs.  The court must now look to the value of the claim lost, if any, in determining the amount in controversy in the present case.  Durr submits opinion evidence from a legal expert licensed in New Jersey which opines that even assuming 100% liability in plaintiff's favor, Lee's injuries would be no more than $10,000 in a New Jersey court.  Lee has submitted unsworn testimony from a licensed attorney in New Jersey that the underlying case had an approximate value of $90,000.00.  What Lee's counsel fails to address is the credibility issue that would confront a jury if this case had gone to trial on the merits.

Lee has sworn in her declaration, <u>inter alia</u>, that despite the fact that her physical and mental suffering was caused by the accident and by Durr's alleged disrespect and neglect, she made no mention of her foot pain to her psychiatric care professionals "because they were not capable of helping me with my foot pain, so it did not seem appropriate for me to speak to them about it." Id. at ¶ 67. Lee has submitted medical documentation that reveals, <u>inter alia</u>, the reason she

was taking prescribed painkillers was pain she was experiencing from migraine headaches brought on by a dental whitening procedure, with foot pain listed as a secondary cause of pain.

This court has painstakingly read every document submitted by the parties in order to determine if Lee's injuries reach the amount in controversy level required by diversity jurisdiction. In his declaration (Doc. No. 68), Lee's counsel states that the amusement park was 100% liable for the accident, and the court concurs that there was no fault on Lee's part, so no downward computations are needed to reduce any possible award on the basis of contributory negligence. The court also considered the settlement amount received by Javier Nieves, a New Jersey resident who was sitting in the same car as Lee when the accident occurred. Doc. No. 68, Ex. 5. Finding that the amusement park was 100% liable, Nieves received damages of $30,000 plus $17,917.77 in medical expenses for a total of $47,917.77. Settlement documentation reveals that Nieves received three lumbar spinal blocks and was on morphine for his back pain. Id.

Durr asserts, and the evidence bears out that Lee's main complaint is the cyst on her foot, and evidence was presented to the court that the cyst can be treated so that it may not recur. There is no indication in Lee's medical history that her suffering due to the cyst on her foot was comparable to that of Mr. Nieves.

The court further notes that Lee often sought medical attention for her foot injury at the direction of her legal counsel. Durr also argues that Lee has grossly exaggerated her complaints of pain, citing examples of her activities that contradict her affirmations of intense pain, including criminal activities. Lee counters that the pain caused by the roller coaster accident and the disrespect and neglect she received at the hands of Durr caused her to have an increased propensity to shoplift. (Doc. No. 67, ¶ 62). The court notes that Lee's extensive criminal history encompasses a large time frame, extending from well before and continuing after the roller coaster accident.

In order to determine whether the amount in controversy is sufficient to justify diversity jurisdiction, the court is required to assess Lee's veracity in regard to her claims. This assessment was based on the entirety of the voluminous materials submitted in this case on both Liberty's motion and Durr's motion to dismiss. The court finds with near certainty that Lee's medical, mental health and criminal histories would be used extensively for impeachment purposes during a trial (see Federal Rules of Evidence Rule 606 (West 2011)). In fact, after careful consideration of Lee's allegations in her complaint and statements made in her declaration, with a careful comparison of same against medical records, mental health records and Lee's statements in regard to her extensive criminal history,

along with Lee's spotty employment records from the Social Security Administration, the court finds Lee's sworn statements to be rife with inconsistencies, exaggerations, and outright falsehoods.  Based on the evidence before this court, a jury is likely to find Lee's testimony regarding her injuries and subsequent pain and suffering to be incredible.  Accordingly, the court finds that the amount in controversy here is far less than the required $75,000 for subject matter jurisdiction in a diversity case.

      Because this court has been obliged to read all of the submissions of the current motions in this matter, for the sake of judicial efficiency, the court would prefer to issue a decision on Durr's motion to dismiss.  However, upon its finding that once again this court does not have jurisdiction, the court is again prevented from deciding this matter on the merits.  Durr's motion to dismiss for lack of diversity jurisdiction is granted.

      **B.**    **Jurisdiction for Third Party Complaint**

Rule 14(a) of the Federal Rules of Civil Procedure permits a defendant, as a third-party plaintiff, to bring in a third party "who is or may be liable to it for all or part of the claim against it." Fed.R.Civ.P. 14(a) (West 2011).  Durr brings his third-party complaint against Liberty pursuant to the Declaratory Judgment Act, codified at 28 U.S.C. §§ 2201 et al.  "At the outset, it should be noted that the

Declaratory Judgment Act, by itself, is insufficient to confer federal jurisdiction over [a plaintiff's] claims in the absence of a controversy involving a federal question. The Act not only fails to establish standing but also fails to raise a federal question sufficient to satisfy the requirements for subject matter jurisdiction." Tasini v. New York Times, Inc., 184 F.Supp.2d 350, 358, FN. 12 (S.D.N.Y. 2002). "The Declaratory Judgment Act, 28 U.S.C. § 2201, does not independently create federal jurisdiction ... because an action for declaratory judgment may be brought in federal court ordinarily only if there would exist a basis for federal jurisdiction in a coercive action between the two parties." Id. (quoting Warner-Jenkinson Co. v. Allied Chem. Corp., 567 F.2d 184, 186 (2d Cir.1977)).

In the case at bar, therefore, because there is no diversity between Durr and Liberty as both are citizens of New York State, and given that the Declaratory Judgment Act, 28 U.S.C. § 2201 does not independently create federal jurisdiction, Durr's third party complaint is dismissed for lack of subject matter jurisdiction. Accordingly, Liberty's motion for summary judgment is denied as moot. The court urges the parties to enter into settlement discussions in this matter rather than further taxing the resources of this or any other court.

## III.   Conclusion

For the reasons set forth supra, Robert A. Durr's motion to dismiss for lack of subject matter jurisdiction (Doc. No. 53) is hereby GRANTED.  Durr's third party complaint against Liberty is dismissed for lack of subject matter jurisdiction. Liberty's motion for summary judgment (Doc. No. 46) is DENIED AS MOOT. The Clerk is directed to close this case.

SO ORDERED.

March 23, 2011

_____
Neal P. McCurn
Senior  U.S. District Judge